Good morning, Your Honors. Ms. Boone, may it please the Court. There are two issues here that evolved out of the trial of Jason Roan. One is the sentencing issue. The second is an issue that has to do with the admission of evidence. The sentencing issue comes under the topic of disparity in sentencing. And a second portion of that issue, which I will talk about, has to do with the history and characteristics of the defendant. The evidentiary issue, which is the second argument that I will make, has to do with the admission of evidence under 414, as it should have been modified by 403. And, Your Honor, I'm sorry. I meant to ask for two minutes' rebuttal. Okay. Thank you. Very good. Before I start on the sentencing disparity issues, I must say that there's a case that has come down that has impacted all of the criminal law as far as the Federal Bar is concerned, and that is Gaul, and probably has impacted on the State courts as well. Gaul v. the United States tells us three things, none of which were in front of Judge Martone, the trial judge, when this case went to trial and when it went to sentencing. First, consider all the factors under Section 3553A. That's quite important because one of those factors is the disparity argument I'm about to make. The second is, do not presume that that guideline calculation is reasonable. Indeed, in this case, the argument before the Court and to you all is that it is unreasonable. Are you arguing that Mohammed is not the controlling authority in this matter? Yes, Your Honor. I am arguing that there are cases that the case of Gaul has now moved us beyond where Mohammed was. And in what way? In the sense that Gaul tells us to look at sentencing, among other things, to in effect look at sentencing disparities, and one of those sentencing disparities that I'm arguing for is the disparity between State and Federal cases. Now, Gaul doesn't say that. I will freely admit that. I can say that's a generous interpretation. It is, Your Honor. On the other hand, we wouldn't be there and I wouldn't be making that argument if the guidelines were no longer the sacrosanct formatting, if you will, for sentencing. And what I mean by that is this, and it really does come down to Jason Roan as a defendant. If we were to stick by the guidelines, and I'm sorry, if we were to stick by the disparity in sentencing issues as reflected only among Federal courts, we would be leaving out a generous portion of the population of the State of Arizona, and those are the people who live on Indian reservations. Well, in this case, as I gather, nobody disputes that the proper guideline range was 360 months to life, and your guy got less than that, right? Correct, Your Honor. He got, in effect, 22 years. Okay. So under the circumstances, a district court departed downward to reflect the lack of a criminal history. I won't go through the whole thing here. You know it better than I do, but he really gave some very, very careful consideration under 3553A, but he was concerned about the seriousness of the crime. What's wrong with that? It's what he didn't do, Your Honor, that he should have. And what was that? And that is, he never did compare the sentence that Mr. Roan got with other sentences. If we stick to the guidelines, we would result in a dramatic and draconian application of the sentencing. It sounds to me like you're postulating a regime that is, in effect, if I may call it this, a de facto sua sponte guideline reimposition, only each district judge has to go around and find out what everybody else in the United States, or certainly within the district, has been That very lack of ability of a trial judge to make a decision based upon the individual defendant that got us to Gall in the first place, isn't it? Not necessarily, Your Honor. And my point to Judge Martone was, Your Honor, look at some of the other cases, and I think it's really necessary to look at other cases in the state of Arizona. That is because in the federal scheme of things, prosecuting on the Indian population is a very skewed sense of sentencing with respect to that population. Okay, but are you suggesting that if you have crime X, that every district judge in Arizona, all of whom deal with a large number of Indian cases, have to be sure of what every other district judge in Arizona has done with respect to crime X? Is that what your proposition is out of Gall? My proposition is that with respect to sex offenses, yes. Only sex offenses? Because they are so remarkably different in terms of their result when compared with the rest of the population of the United States. And that is because if one looked at the state of Arizona, for example, if this case were tried in Holbrook or Flagstaff or some other community, Mr. Roan would be looking at what I calculate to be a presumptive sentence of approximately five years. There would be mitigators and aggravators he might get as much as ten years, but certainly not 22 years. And that's why I think that there's been a very much of an injustice done with respect to sexual assault offenses. Counsel, is your argument, though, that so disparity in sentencing, the district court judge is required to look at what the state would have imposed for a similar offense? Only because of the unique nature of the way this offense, sex crimes in the state of Arizona, are handled. They are unique because, obviously, the federal government isn't prosecuting anyone other than those who reside in the Indian reservation. And there's an inherent, I'm not calling it discrimination, but there's an inherent skewing with respect to what those people get in terms of a sentence than what someone else would get if they were out in the general population. Doesn't that also occur, though, in other contexts where certainly if some cases are taken, some drug cases are prosecuted by the federal government, in some instances those sentences can be many multiples longer than they would be if they were prosecuted by the state authorities. Is that the same analysis, then, that that judge would have to consider disparity in sentencing? If the case was prosecuted in some instances literally across the street, somebody may receive a sentence of two years or 18 months. If they're prosecuted in the federal courthouse across the street, they could easily receive a ten-year minimum mandatory. Yes, Your Honor, it is different, because in this case we're dealing with a segment of population which is faced with this different result. That is the Indian population. They're not across the street. They're on the reservation. And we've seemingly and unintendedly carved out a whole different way to approach them as opposed to, excuse me, as to approach others. Is it fair to say your disparity in sentencing argument then does not apply to what other individuals with similar records who commit similar crimes in the federal system receive, but it's disparity between what this gentleman received versus what he would have received had he been prosecuted on the state side? It certainly does apply that way to Mr. Rowan, yes. Yes, it does, Your Honor. The other part of what you are saying is can one compare disparities within the federal system. I think I don't mean to misstate what I'm getting at. I think that needs to be done as well. That's the whole idea behind it. And wasn't it done in this context? So because the sentence, there was no objection, you did not object to the way in which the court calculated the sentencing guidelines, is that correct? That's correct, Your Honor. And so in this instance, did the court ultimately calculate the guidelines to be 262 to 327? No, Your Honor. What he did was Judge Martone realized that under the guideline calculation, Mr. Rowan's criminal history would not have allowed him to have any regardless of whether your criminal history, one or six, you were going to do, I think, 360 months. And so Judge Martone recalculated it by giving him three credits on that propensity portion of the sentencing guideline. That brought it down to, I think it was 39 points. And consequently, the judge did give him a concession, but that was only with respect to criminal history. These other things, sentencing disparity, they were never addressed by the judge. Although theoretically, the concession is eight years less than what the sentencing guidelines called for, correct? Approximately, yes, Your Honor. And so theoretically, wouldn't it be true that someone who received a sentence even within the guideline range, that they would have received a sentence similar to what others who committed similar offenses would have received in the federal system? If one doesn't move away from the guidelines, that was the whole problem, and I think we have Gall and other Supreme Court cases saying we need to back away from that and approach it in a different context. You might want to hold that good thought, because your time is almost gone. So hold up that thought, and we'll maybe give you a little extra time on rebuttal. Thank you, Your Honor. Let's now hear from the government. Linda Boone. Good morning. May it please the Court, Linda Boone on behalf of the United States. Please excuse my voice. I came down with a cold over the weekend. But hopefully my voice will not distract this Court from determining that the district court made its decision, and I would like to move to the first issue, which counsel didn't get to address, and that was the omission of the evidence under Rule 414. That was made in a careful and a judicious manner. First of all, this Court should look at exactly what the evidence was that is challenged. It was less than a page of testimony. It was cumulative evidence by the victim. The victim was subject to extensive cross-examination. And before admitting the evidence, the district court determined that the defendant, in fact, was not contesting, not denying that the touching occurred. And that's very important. The district court determined that the defendant was merely characterizing this touching in a different manner. Counsel, in this particular case, as I understand, the trial court was concerned this was going to be a credibility contest between the victim and the defendant in this case. And under 414 and under our case law, that's an acceptable decision on the part of the district court, is it not? Absolutely, Your Honor. That is correct. And that is exactly what the court explained in detail to the defendant. The court explained that this was a new area of law. And also contrary to the defendant's argument, the district court noted that it had to balance. It did conduct a proper balancing test in this case. If the Court has no further questions on that issue, I'll move to the sentencing. The government does not agree with the defendant that Gaul changes this Court's review of sentencing. Gaul says that this Court, excuse me, that the district court must first conduct a proper calculation of the advisory guidelines. And that is exactly what the district court did in this case. There is no evidence of error in its calculation, and the defendant does not challenge the calculation of the guidelines. So then we move on to the reasonableness of the sentence. The district court did exactly what the defendant asked it to do. The defendant did not ask the court for any specific sentence. The defendant specifically asked the district court to consider that the five-point enhancement was too much, because giving this defendant the five-point enhancement ignored the fact that the defendant had no criminal history. The defendant asked for a deviation. The defendant got a deviation. The district court – I'm sorry. If we postulate for a moment that we agree with the government's argument to this point, what is your take on Mr. Eisenberry's comment that Gaul and the other cases decided by the Supreme Court in connection with the crack cocaine disparity, what role, if any, should that have on the sentencing of Indian citizens under U.S. law versus a far lesser sentence by State courts? Your Honor, unfortunately, we have to look at the law as it exists now.  Congress has the ability to decide what sentence it wants to give, even if the State doesn't want to give it a sentence at all, does it? Absolutely, Your Honor. It is Congress's act. Congress made this law. And the district court laid out quite clearly its reasoning and how it got to the sentence in this case. And the government would ask that the court find that it was reasonable. If the court has no further questions. Any questions? Thank you very much. Thank you. Mr. Eisenberry, since counsel has graciously left some additional time, we're going to give you the two minutes that you originally had. So would you like to give us your rebuttal and tell us why Congress has no authority to sentence Indians under this law? It isn't ‑‑ if I may rephrase that, Your Honor, I don't agree with how the court has put it respectfully. I believe that what Congress has done is put it respectfully. What Congress has done is said consider sentencing disparities and avoid those. In other words, Congress hasn't carved out any exception for any particular population. But what I think it's tried to do is make sure that there is respect for the law by virtue of the fact that not only do we give out harsh penalties for everybody, but that, on the other hand, we give out seemingly judicious penalties, lesser When it really boils down to it, you pled eloquently that you have an Indian population that's being treated differently under federal law for exactly the same offense that would be far less harshly treated under state law. That's your primary premise, is it not? Yes, it is, Your Honor. So if that's the case, how do we get around this issue that I discussed with government counsel about that Congress is right? I mean, this is a federal statute. Anybody that's ever looked at criminal law realizes we've got two distinct systems, state law and federal law. And the Congress has determined that for sex offenses it's going to be very, very, very harsh. And there are elected officials, and that's what they decided. What right do we have as a federal appellate court to strike down a sentence based upon what – I'm not even sure what your field of disparity is, but what right do we have to do that? Is it unconstitutional? Is that your argument? Almost, yes, Your Honor. In effect, it does border on that, even though my brief didn't approach it in that way. And I don't read Congress in terms of 3553 saying anything about what they're getting at being limited to just simply the federal – in the federal context. Would you concede you didn't brief this issue? No, Your Honor. Really, in a sense, it's waived because you haven't briefed it. Well, I haven't briefed it. That is correct, Your Honor. And I didn't really come to this until I read Gall. Well, since your time is up, we will congratulate you on the innovative nature of your argument and wish you a wonderful day. Thank you. And this case, U.S. v. Roan, is submitted.
judges: Thompson, Smith, Hayes